UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jonathan Barker, | No. 2:20-cv-02170-KJM-CKD |
| Plaintiff, | ORDER |
| v. | |
| Stoli Group (USA), LLC, | |
| Defendant. | |

Plaintiff Jonathan Barker's work for defendant Stoli Group during 2019 qualified him for a bonus. However, Stoli terminated him before it issued bonuses for 2019 to employees and refused to pay Barker any bonus. Stoli now moves for summary judgment on Barker's wage claims and his claim for breach of the covenant of good faith and fair dealing. As explained below, **the court denies the motion.**

I.     **BACKGROUND**

The following facts are undisputed unless otherwise noted. Stoli is the exclusive United States distributor for Stolichnaya vodka. Pls. Stmt. of Undisp. Facts (SUDF) ¶ 1, ECF No. 24-1. Stoli markets and sells vodka to bars and restaurants through "on-premises" channels and to retailers through "off-premises" channels. *Id.* In 2016, Stoli hired Barker as a Key Account Manager, making him responsible for managing the "on-premises" channel in the Northern California region. *Id.* ¶ 2. According to his offer letter, Barker was "eligible to participate in the

1   Annual Bonus Plan in accordance with Plan Guidelines."  Offer Letter at 1, Def. Ex. C, ECF

2   No. 23-3.

3           Barker does not "recall ever receiving an employee handbook."  SUDF ¶ 14; Barker Dep.

4   at 47:17–20, Pl. Ex. 1, ECF No. 24-2.  But at the start of his employment, Barker signed an

5   acknowledgment that he did receive a copy.  Acknowledgment, Def. Ex. H, ECF No. 23-3.  The

6   acknowledgment form states that the "handbook . . . [is] a summary of [Stoli's] policies,

7   procedures and benefits" and that "[n]o provision . . . is to be construed as a contract, a guarantee

8   of employment or a guarantee of the terms and conditions of employment."  *Id*.  The Handbook

9   contains a provision explaining the Pay-for-Performance policy, which provides for "an annual

10  target bonus should the company achieve exceptional results."  Handbook at 16–17, Def. Ex. F,

11  ECF No. 23-3.  Salary increases are within Stoli's discretion.  *Id*. at 16.  An "employee must be

12  actively employed with [Stoli] at the time of payment in order to be bonus eligible."  *Id*. at 17;

13  SUDF ¶ 7.  Barker disputes whether this provision applies to his bonus plan.  SUDF ¶ 7.

14          Barker received bonuses prior to the disputed bonus for 2019.  In early 2018, Stoli

15  announced that bonuses for 2017 "would be sharply reduced as a result of the company's business

16  performance."  SUDF ¶ 17.  Barker received a memo informing him he would only receive "25%

17  of [his] FY2017 bonus potential."  *Id*.  "Barker concedes that Stoli appropriately exercised its

18  discretion to determine a bonus amount . . . for calendar year 2017."  *Id*. ¶ 18.  The following

19  year, FY2018, Barker received only 70 percent of his "potential" bonus.  *Id*. ¶ 20.

20          As the COVID-19 pandemic began to affect business, Stoli executives started discussing

21  ways to mitigate the financial hardship the company was beginning to experience with closure of

22  many bars and restaurants.  *Id*. ¶ 24.  In March 2020, Stoli indefinitely deferred the payment of

23  2019 bonuses until it was in a better financial position.  *Id*. ¶ 25.  Stoli informed Barker on April

24  9, 2020, that his bonus for 2019 was calculated to be $20,414.  *Id*. ¶ 26.  Stoli also implemented a

25  restructuring plan, which reduced on-premises distribution.  *Id*. ¶ 29.  As part of that plan, Stoli

26  terminated Barker on June 17, 2020.  *Id*. ¶ 31.  Two days later, Stoli announced it would pay 2019

27  bonuses in the second quarter of 2021, to individuals "actively employed with the company at the

28  /////

1 | time of payment." *Id.* ¶ 32; June 2020 Letter, Def. Ex. N, ECF No. 23-3.  Stoli paid 2019

2 | bonuses in March 2021.  SUDF ¶ 33.

3 |      Barker initially filed a complaint in state court, alleging: 1) failure to pay wages earned in

4 | violation of California Labor Code section 204(a); 2) failure to pay all wages owed at termination

5 | of employment in violation of the California Labor Code section 203; and 3) breach of the

6 | covenant of good faith and fair dealing.  *See generally*, Compl., Not. of Removal Ex. A, ECF

7 | No. 1.  Stoli removed, ECF No. 1, and now moves for summary judgment, Mot., ECF No. 23.

8 | Barker opposes, ECF No. 24, and Stoli has replied, ECF No. 25.  The court held a hearing by

9 | videoconference on October 29, 2021.  Sheri Leonard appeared for Barker and Jonathan Persky

10 | appeared for Stoli with Nathan Norimoto observing.

11 | **II.   LEGAL STANDARD**

12 |      A court may grant summary judgment "if . . . there is no genuine dispute as to any

13 | material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

14 | The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

15 | resolved only by a finder of fact because they may reasonably be resolved in favor of either

16 | party," or conversely "whether it is so one-sided that one party must prevail as a matter of law."

17 | *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 251–52 (1986).

18 |      The moving party bears the initial burden of showing the district court "there is an

19 | absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S.

20 | 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish that there

21 | is a genuine issue of material fact. . . ."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

22 | 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular parts

23 | of materials in the record . . . ; or show[ ] that the materials cited do not establish the absence or

24 | presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

25 | support the fact."  Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[The

26 | nonmoving party] must do more than simply show that there is some metaphysical doubt as to the

27 | material facts.").  Moreover, "the requirement is that there be no genuine issue of material

28 | fact. . . .  Only disputes over facts that might affect the outcome of the suit under the governing

1    law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48

2    (emphasis omitted).

3        As noted above, in deciding a motion for summary judgment, the court draws all

4    inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*,

5    475 U.S. at 587–88. "Where the record taken as a whole could not lead a rational trier of fact to

6    find for the non-moving party, there is no 'genuine issue for trial.'" *Id*. at 587 (citation omitted).

7    **III.   ANALYSIS**

8        **A.   Wage Claims**

9        The court first considers whether summary judgment is appropriate for Barker's wage

10   claims. California courts have found that "[i]ncentive compensation, such as bonuses and profit-

11   sharing plans, . . . constitute wages." *Schachter v. Citigroup, Inc.*, 47 Cal. 4th 610, 618 (2009)

12   (collecting cases). A plaintiff's eligibility to receive a bonus "is properly determined by the . . .

13   plans' specific terms and general contract principles." *Id.* at 622 (quoting *Neisendorf v. Levi*

14   *Strauss & Co.*, 143 Cal. App. 4th 509, 523 (2006)). "[N]othing in the public policy of

15   [California] concerning wages . . . transforms [a] contingent expectation of receiving bonuses into

16   an entitlement." *Neisendorf*, 143 Cal. App. 4th 522. "Only when an employee satisfies the

17   condition(s) precedent to receiving incentive compensation, which often includes remaining

18   employed for a particular period of time, can that employee be said to have earned the incentive

19   compensation (thereby necessitating payment upon resignation or termination)." *Schachter*,

20   47 Cal. 4th at 622.

21       Employers may condition the eligibility of a bonus on the requirement that the plaintiff be

22   an active employee at the time the bonus is to be paid. *See Neisendorf*, 143 Cal. App. 4th 527;

23   *Arminak v. Arminak & Assocs., LLC*, No. 16-3382, 2017 WL 10403355, at *19 (C.D. Cal.

24   Aug. 11, 2017). However, "[i]f the employee is discharged before completion of all of the terms

25   of the bonus agreement, and there is not valid cause, based on conduct of the employee, for the

26   discharge, the employee may be entitled to recover at least a pro-rata share of the promised

27   bonus." *Schachter*, 47 Cal. 4th at 622 (quoting Cal. Dept. of Industrial Relations, Div. of Labor

28   /////

4

1    Stds. Enforcement (DLSE), Enforcement Policies and Interpretations Manual § 35.5 (Rev. 2006);

2    DLSE Opn. Letter No. 1987.06.03 (June 3, 1987)).

3        Here, the parties dispute the bonus policy's terms. Stoli contends the terms include those

4    in the Employee Handbook, Mot. at 2, while Barker argues the Handbook is not a contract, Opp'n

5    at 12. For the purposes of summary judgment, Barker is correct. By the Handbook's own terms,

6    it is not part of any contract. *See* Acknowledgment, Def. Ex. H ("No provision of this handbook

7    is to be construed as a contract . . . or a guarantee of the terms and conditions of employment.");

8    *Esparza v. Sand & Sea, Inc.*, 2 Cal. App. 5th 781, 789 (2016) (holding terms of "welcome letter"

9    were not part of an employment contract because letter claimed it "was not intended to create

10   'any legally enforceable obligations,' including a legally enforceable obligation to arbitrate").

11   "Whether employment policies create unilateral contracts will be a factual question in each case."

12   Opp'n at 12 (quoting *Asmus v. Pacific Bell*, 23 Cal.4th 1, 11 (2000)). Without the Handbook's

13   terms or those of any other document clearly establishing a contract, a crucial factual question is

14   unresolved and for a factfinder to decide. Stoli has cited no other evidence showing it is

15   undisputed that Barker agreed he would not receive a bonus if the company unilaterally

16   terminated his employment before a previously-earned bonus was paid. Although Stoli did

17   include that condition in a June 2020 letter sent to all then-active employees, it terminated

18   Barker's employment before it sent that letter. *See* Opp'n at 12.

19        Additionally, Stoli is not entitled to summary judgment based on its claimed discretion to

20   delay payment of bonuses, or to refuse to pay them at all. While the Handbook contains a

21   provision covering Stoli's discretion, Mot. at 3, as discussed above, the court cannot conclude the

22   Handbook is not an enforceable contract as a matter of law. Stoli also claims its discretionary

23   authority is evident by virtue of its past actions of paying Barker less than his full bonus potential

24   during times of financial hardship. *Id.* at 3–4. However, a reasonable fact-finder could assess the

25   history between the parties, specifically the timing of prior payments, and find that Barker earned

26   the 2019 bonus and rightfully expected prompt payment after Stoli notified him in April 2020 that

27   it had calculated his bonus for 2019 as $20,414. The court denies summary judgment on this

28   claim without deciding whether Barker's termination was "valid cause" within the meaning of

1   *Schachter*, 47 Cal. 4th at 622; as explained above, a reasonable fact finder might find Stoli should

2   have paid his bonus well before his termination.

3   **B.      Breach of Implied Covenant of Good Faith and Fair Dealing**

4          The court turns to Barker's claim for breach of the implied covenant of good faith and fair

5   dealing.  "[T]he covenant is implied as a supplement to the express contractual covenants, to

6   prevent a contracting party from engaging in conduct that frustrates the other party's rights to the

7   benefits of the agreement." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995), *as modified*

8   *on denial of reh'g* (Oct. 26, 1995); *City of Fresno v. Tokio Marine Specialty Ins. Co.*, No. 1:18-

9   504, 2018 WL 3691407, at *4 (E.D. Cal. Aug. 1, 2018) (same).  "[W]here an implied covenant

10  claim alleges a breach of obligations beyond the agreement's actual terms, it is invalid." *Guz v.*

11  *Bechtel Nat. Inc.*, 24 Cal. 4th 317, 326–27 (2000).

12         Barker claims Stoli breached the implied covenant by interfering with his ability to

13  receive his bonus.  On the one hand, Barker has not "present[ed] any evidence that [he] was other

14  than an at-will employee subject to termination for any lawful reason." *Parker-Reed v. Sprint*

15  *Corp.*, No. 03-2616, 2005 WL 2648028, at *5 (E.D. Cal. Oct. 14, 2005); *see* Reply at 4*; see also*

16  Acknowledgment.  Courts have found a "[p]laintiff's failure to present any evidence whatsoever

17  that Defendant violated the employment agreement or the implied covenant of good faith and fair

18  dealing" can be fatal on summary judgment. *Parker-Reed*, 2005 WL 2648028, at *5.  However,

19  in *Guz v Bechtel National, Inc.*, the California Supreme Court observed that "the covenant might

20  be violated if termination of an at-will employee was a mere pretext to cheat the worker out of

21  another contract benefit to which the employee was clearly entitled, such as compensation already

22  earned." 24 Cal. 4th at 353 n.18.  A state Court of Appeal also recently confirmed a plaintiff may

23  prevail on a claim for breach of the implied covenant of good faith and fair dealing based on the

24  theory the California Supreme Court articulated in *Guz*.  *See King v. U.S. Bank Nat'l Ass'n*,

25  53 Cal. App. 5th 675, 707 (2020), *review denied* (Nov. 10, 2020).  Here, a rational fact-finder

26  could find that Stoli terminated Barker in a pretextual attempt to deprive him of a bonus it had

27  told him he already earned.  It informed Barker his bonus would be a specific sum, and in the

28  past, it had paid bonuses soon after making similar announcements.  Stoli then delayed the 2019

6

1  bonus, terminated Barker's employment, and announced a few days later that those bonuses

2  would be paid only to current employees.  Stoli has never claimed its decision was motivated by

3  any reason but costs, but that alone does not preclude Barker's ability to state a good faith and

4  fair dealing claim.  The court also denies summary judgment of this claim.

5  **IV.  CONCLUSION & TRIAL SETTING**

6  The court **denies the motion for summary judgment**.

7  A final pretrial conference is set for **September 30, 2022, at 10:00 a.m. before the**

8  **undersigned.**  At least one of the attorneys who will conduct the trial for each of the parties shall

9  attend the Final Pretrial Conference.  If by reason of illness or other unavoidable circumstance a

10  trial attorney is unable to attend, the attorney who attends in place of the trial attorney shall have

11  equal familiarity with the case and equal authorization to make commitments on behalf of the

12  client.

13  Counsel for all parties are to be fully prepared for trial at the time of the Final Pretrial

14  Conference, with no matters remaining to be accomplished except production of witnesses for

15  oral testimony.  **The parties shall confer and file a joint pretrial conference statement by**

16  **September 9, 2022.  Concurrently with the filing of the Joint Final Pretrial Conference**

17  **Statement, counsel shall submit to chambers the word processable version of the Statement,**

18  **in its entirety (including the witness and exhibit lists) to:**  kjmorders@caed.uscourts.gov**.**  The

19  provisions of Local Rule 281 shall apply with respect to the matters to be included in the joint

20  pretrial statement.  In addition to those subjects listed in Local Rule 281(b), the parties are to

21  provide the court with the following:

22  1.  A plain, concise statement that identifies every non-discovery motion previously

23  tendered to the court and its resolution.

24  2.  A concise, joint list of undisputed core facts that are relevant to each claim.

25  Disputed core facts should then be identified in the same manner.  The parties are

26  reminded not to identify every fact in dispute but only those disputed facts that are

27  essential to the formulation of each claim.  Each disputed fact and undisputed fact

28  should be separately numbered or lettered.  Where the parties are unable to agree

7

on the core disputed facts, they should nevertheless list core disputed facts in the above manner.

3. Concise lists of disputed evidentiary issues that will be the subject of a party's motion *in limine*, and whether the parties believe resolution of any of these motions will be necessary before the first day of trial.

4. Each party's points of law, which concisely describe the legal basis or theory underlying their claims and defenses.  Points of law should reflect issues derived from the core undisputed and disputed facts.  Parties shall not include argument with any point of law; the parties may include concise arguments in their trial briefs.

5. A joint statement of the case in plain concise language, which will be read to the jury during voir dire and at the beginning of the trial.  The purpose of the joint statement is to inform the jury what the case is about.

6. The parties' position on the number of jurors to be impaneled to try the case.

7. The parties' report on settlement discussions to date and other information related to settlement that will allow the court to schedule a final pretrial settlement conference.  The parties may request a court-convened settlement conference before the final pretrial conference by filing a notice of their request at any time.

8. The parties' positions on whether they will consent to a magistrate judge trying the case, given the significant backlog of criminal cases pending before the district court.

Discovery documents to be listed in the pretrial statement shall not include documents to be used only for impeachment and in rebuttal.

The parties are reminded that as provided by Local Rule 281 they are required to attach to the Final Pretrial Conference Statement an exhibit listing witnesses and exhibits they propose to offer at trial.  After the name of each witness, each party shall provide a brief statement of the nature of the testimony to be proffered.  The parties may file a joint list or each party may file separate lists.  These list(s) shall not be contained in the body of the Final Pretrial Conference

1    Statement itself, but shall be attached as separate documents to be used as addenda to the Final

2    Pretrial Order.

3         Plaintiff's exhibits shall be listed numerically.  Defendant's exhibits shall be listed

4    alphabetically.  The parties shall use the standard exhibit stickers provided by the court: pink for

5    plaintiff and blue for defendant.  In the event that the alphabet is exhausted, the exhibits shall be

6    marked AA, AB, AC, . . . AZ, then BA, BB, BC, . . . BZ, and so on through ZZ, as necessary.  All

7    multi-page exhibits shall be stapled or otherwise fastened together and each page within the

8    exhibit shall be numbered. The list of exhibits shall not include excerpts of depositions to be used

9    only for impeachment.  In the event that plaintiff(s) and defendant(s) offer the same exhibit

10   during trial, that exhibit shall be referred to by the designation the exhibit is first identified.  The

11   court cautions the parties to pay attention to this detail so that all concerned, including the jury,

12   will not be confused by one exhibit being identified with both a number and a letter.  The parties

13   are encouraged to consult concerning exhibits and, to the extent possible, provide joint exhibits,

14   which shall be designated as JX and listed numerically, e.g., JX-1, JX-2.  **Counsel shall produce**

15   **all trial exhibits to Casey Schultz, the Courtroom Deputy, no later than 3:00 p.m. on the**

16   **Friday before trial.**

17        The Final Pretrial Order will contain a stringent standard for the offering at trial of

18   witnesses and exhibits not listed in the Final Pretrial Order, and the parties are cautioned that the

19   standard will be strictly applied.  On the other hand, the listing of exhibits or witnesses that a

20   party does not intend to offer will be viewed as an abuse of the court's processes.

21        Failure to comply with Local Rule 281, as modified by this order, may be grounds for

22   sanctions.

23        The parties also are reminded that as provided by the Federal Rules of Civil Procedure it

24   will be their duty at the Final Pretrial Conference to aid the court in: (a) the formulation and

25   simplification of issues and the elimination of frivolous claims or defenses; (b) the settling of

26   facts that should properly be admitted; and (c) the avoidance of unnecessary proof and cumulative

27   evidence.  Counsel must cooperatively prepare the joint Final Pretrial Conference Statement and

1   participate in good faith at the Final Pretrial Conference with these aims in mind.[1]  A failure to do

2   so may result in the imposition of sanctions which may include monetary sanctions, orders

3   precluding proof, elimination of claims or defenses, or such other sanctions as the court deems

4   appropriate.

5         This order resolves ECF No. 23.

6         IT IS SO ORDERED.

7   DATED:  June 1, 2022.

8

9                          CHIEF UNITED STATES DISTRICT JUDGE

---

[1]  "If the pretrial conference discloses that no material facts are in dispute and that the undisputed facts entitle one of the parties to judgment as a matter of law," the court may summarily dispose of the case or claims.  *Portsmouth Square v. Shareholders Protective Comm.,* 770 F.2d 866, 868-69 (9th Cir. 1985).